IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ROBERT RAY LAWRENCE,<br><br>       Plaintiff,<br><br>       vs.<br><br>JIM SALMONSON (WARDEN), TOM<br>WOOD (ASSO. WARDEN),<br>ROXANNE WIGERT, ALVIN FODE,<br>GARY REED, and BEN SHUPERT,<br><br>       Defendants. | CV 18-00076-H-DLC-JTJ<br><br><br>ORDER AND FINDINGS AND<br>RECOMMENDATIONS OF UNITED<br>STATES MAGISTRATE JUDG |

Plaintiff Robert Lawrence, a prisoner proceeding without counsel, has filed

a Motion Seeking Immediate Injunction (Doc. 6) and a Motion to Amend

Defendant List (Doc. 7). As currently plead, the Complaint fails to state a claim

upon which relief may be granted. As such, Mr. Lawrence has not satisfied the

requirements for injunctive relief and that motion should be denied. The Motion

to Amend Defendant List will be denied for failure to comply with Local Rule

15.1 but Mr. Lawrence will be given an opportunity to file an amended complaint.

1

# I.  STATEMENT OF THE CASE

## A.     Parties

Mr. Lawrence is a state prisoner proceeding without counsel.  He is proceeding in forma pauperis.  Mr. Lawrence is incarcerated at Montana State Prison ("MSP").

Mr. Lawrence names the following Defendants:  Jim Salmonson (Warden), Tom Wood (Associate Warden), Roxanne Wigert, Alvin Fode, Gary Reed, and Ben Shupert.  (Complaint, Doc. 2 at 1.)  In his motion to amend, Mr. Lawrence seeks to add Case Manager Amber Graham as a Defendant but he provided no allegations against Ms. Graham.  (Doc. 7.)

## B.  Factual Allegations

Mr. Lawrence alleges he was transferred from North Dakota State Prison to MSP on August 5, 2015 and he has been trying to get a single cell due to mental disorders and some childhood traumas since that transfer.  He initially contacted Roxanne Wigert and was told to contact classification.  After waiting 6-8 months for a reply he contacted Ms. Wigert again and was told to get something in writing from North Dakota Department of Corrections to show why he should be in a single cell.  Mr. Lawrence claims he obtained these documents for Ms. Wigert.

Mr. Lawrence alleges he also spoke with and provided his paperwork to

2

Security Tech Ben Shupert and CM Gary Reed about the single cell issue.  Mr. Reed recommended a meeting with the prison therapist, Lisa Choquette.  Mr. Lawrence alleges Mr. Reed e-mailed Ms. Choquette but got no result.

Mr. Lawrence claims he then started sending mental health request forms every week for approximately one month with no results.  He was eventually scheduled for an appointment with Lisa Pesant.  He alleges Ms. Pesant met with him and suggested that he start taking medication or intentionally violate DOC rules and policies.  (Complaint, Doc. 2 at 2-5.)

Mr. Lawrence alleges he has been diagnosed with:  aggressive behavior, sleepwalking (which can and sometimes does turn violent), and schizoaffective disorder.  He also claims he was a victim of child abuse and as a result he cannot sleep while there is someone else locked in the cell with him.  (Complaint, Doc. 2-1 at 1-2.)

**C. Claims**

Mr. Lawrence claims Defendants are violating his rights under the Eighth Amendment cruel and unusual punishment clause, the Fourteenth Amendment due process clause, and the Americans with Disabilities Act by: (1) failing to protect him from harm; (2) failing to house him according to his due process rights; (3) failing to consider his mental health disability and putting others at risk; (4)

neglecting his mental health; (5) showing callous disregard by implying that he should get into trouble to get what he wants; and (6) acted with deliberate indifference.  (Complaint, Doc. 2 at 1-2.)

## II.  SCREENING PURSUANT TO 28 U.S.C. §§ 1915, 1915A

### A.  Standard

Mr. Lawrence is a prisoner proceeding in forma pauperis so the Court must review his Complaint under 28 U.S.C. §§ 1915, 1915A.  Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant before it is served if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "A case is malicious if it was filed with the intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005).  A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).  Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed.R.Civ.P. 8(a)(2).  In order to satisfy the requirements in Rule 8 a complaint's allegations must cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

There is a two-step procedure to determine whether a complaint's allegations cross that line. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662. First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680.  Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id.* at 679, 681.  A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief. *Iqbal*, 556 U.S. at 679.  A claim is "plausible" if the factual allegations, which are accepted as true, "allow[ ] the court to draw the

5

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at

678.  This inquiry is "a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

If the factual allegations, which are accepted as true, "do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged—but

it has not "show[n]"—"that the pleader is entitled to relief." *Id.* (*citing*

Fed.R.Civ.P. 8(a)(2)).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se*

complaint, however inartfully pleaded, must be held to less stringent standards

than formal pleadings drafted by lawyers.' " *Erickson v. Pardu*, 551 U.S. 89, 94

(2007); *cf*. Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do

justice").

### B.  Analysis

#### 1.  Americans with Disabilities Act

Title II of the ADA prohibits discrimination on the basis of disability.

*Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).  Title II of the ADA

provides:

> Subject to the provisions of this subchapter, no qualified individual
> with a disability shall, by reason of such disability, be excluded from
> participation in or be denied the benefits of the services, programs, or

activities of a public entity, or be subjected to discrimination by any
such entity.

42 U.S.C. § 12132.  To establish discrimination under the ADA, a plaintiff must

show that: "(1) [he] is a qualified individual with a disability; (2) [he] was

excluded from participation in or otherwise discriminated against with regard to a

public entity's services, programs or activities, and (3) such exclusion or

discrimination was by reason of [his] disability." *Lovell*, 303 F.3d at 1052.

Ninth Circuit precedent is clear that "[t]he ADA prohibits discrimination

because of disability, not inadequate treatment for disability." *Simmons v. Navajo

Cty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010).  "Inadequate medical care does

not provide a basis for an ADA claim unless medical services are withheld by

reason of a disability." *Marlor v. Madison Cty., Idaho*, 50 Fed.Appx. 872, 873

(9th Cir. 2002).

Mr. Lawrence has not stated an ADA claim because his allegation that he

needs a single cell due to his mental illness challenges a condition of confinement

and/or a denial of medical care.  He does not allege discrimination because of a

disability and he has not alleged that he was denied access to programs, services

and activities because he was not granted single cell status.  He also does not

describe how access to any particular program was caused by his failure to receive

7

single cell status.  Accordingly, Mr. Lawrence has failed to state an ADA claim

but he will be given an opportunity to file an amended complaint.

### 2. Eighth Amendment

The denial of single cell status by itself does not rise to the level of an

Eighth Amendment violation.  *See Rhodes v. Chapman*, 452 U.S. 337 (1981).  To

prove a violation of the Eighth Amendment a plaintiff must "objectively show that

he was deprived of something 'sufficiently serious,' and make a subjective

showing that the deprivation occurred with deliberate indifference to the inmate's

health or safety."  *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)

(citations omitted).  This requires factual allegations sufficient to show that

"prison officials were aware of a "substantial risk of serious harm" to an inmate's

health or safety and that there was no "reasonable justification for the deprivation,

in spite of that risk."  *Id.* (*quoting Farmer v. Brennan*, 511 U.S. 825, 837, 844

(1994)).

"[T]o maintain an Eighth Amendment claim based on prison medical

treatment, an inmate must show 'deliberate indifference to serious medical

needs.'"  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006), (*quoting Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976)).  This requires a plaintiff to show (1) "a 'serious

medical need' by demonstrating that 'failure to treat a prisoner's condition could

8

result in further significant injury or the unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." *Id.* (*quoting McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), *overruled on other grounds WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted).

Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim.

9

*Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi*, 391 F.3d at 1058.

Additionally, "a complaint that a physician has been negligent in diagnosing or

treating a medical condition does not state a valid claim of medical mistreatment

under the Eighth Amendment.  Medical malpractice does not become a

constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S.

at 106.

Mr. Lawrence alleges a difference of opinion between prison officials and

himself regarding whether a single cell is a necessary treatment for his mental

health needs which is insufficient to state a claim for relief.  In addition, he admits

in the Complaint that he has been seen by someone who discussed the option of

medications with him.  (Complaint, Doc. 2 at 4.)  These allegations are insufficient

to state an Eighth Amendment claim but Mr. Lawrence will be given an

opportunity to file an amended complaint.

### 3. Due Process

The Due Process Clause protects against the deprivation of liberty without

due process of law. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  In order to

state a cause of action for a deprivation of due process, a plaintiff must first

identify a liberty interest for which the protection is sought. *Id.*  The Due Process

Clause does not confer a liberty interest in freedom from state action taken within

10

a prisoner's imposed sentence. *Sandin v. Conner*, 515 U.S. 472, 480 (1995). A prisoner has a liberty interest protected by the Due Process Clause only where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Keenan v. Hall*, 83 F.3d 1083, 1088 (9th Cir. 1996) (*quoting Sandin*, 515 U.S. at 484).

Mr. Lawrence has no protected liberty interest in having a single cell. "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221–222 (*citing Meachum v. Fano*, 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to-maximum security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose")); *see also Hernandez v. Johnson*, 833 F.2d 1316, 1318 (9th Cir. 1987) (generally, prison classifications do not give rise to a liberty interest). While a liberty interest may arise from state policies or regulations, it must be shown that such conditions create an atypical and significant hardship as set forth in *Sandin v. Conner*, 515 U.S. 472 (1995). It is well established that inmates do not have a constitutional right to be incarcerated at a particular correctional facility or in a particular cell or unit within a facility. *See Meachum*, 427 U.S. at 224–25.

11

Double celling of inmates does not "impose atypical and significant hardship in relation to the ordinary incidents of prison life." *Keenan*, 83 F.3d at 1088.

Because Mr. Lawrence has no protected liberty interest in having a single cell, his procedural due process claim fails as a matter of law. and will be recommended for dismissal in a subsequent order.

## III.  MOTION FOR INJUNCTIVE RELIEF

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter* v. *Natural Resources Defense Council, Inc.,* 555 U.S. 7, 24 (2008) (citations omitted).  It serves not as a preliminary adjudication on the merits, but as a tool to preserve the status quo and prevent irreparable loss of rights before judgment.  *Textile Unlimited, Inc.* v. *A.. BMH & Co., Inc.,* 240 F.3d 781, 786 (9th Cir. 2001).  In reviewing a motion for preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  *Winter*, 555 U.S. at 24 (citations and internal quotation marks omitted).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter*, 555 U.S. at 20 (citations omitted).

12

*Winter* does not expressly prohibit use of a "sliding scale approach to preliminary injunctions" whereby "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance/or the Wild Rockies* v. *Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011).  The Ninth Circuit recognizes one such "approach under which a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor." *Id.* (citations, internal quotation marks omitted).

A preliminary injunction "should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Lopez* v. *Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012) (citations omitted, emphasis in original).  A request for a mandatory injunction seeking relief well beyond the status quo is disfavored and shall not be granted unless the facts and law clearly favor the moving party. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319–20 (9th Cir. 1994).  An award of mandatory preliminary relief should not be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir.1979). "[I]n doubtful cases" a mandatory injunction will not issue.  *Id.*

Finally, the Prison Litigation Reform Act ("PLRA") mandates that prisoner

13

litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, section 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a) . . . operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

Mr. Lawrence seeks an injunction prohibiting MSP and Defendants from retaliating or using abuse of process or any means to harm him because of the Complaint filed in this matter. He also seeks a single cell.

Mr. Lawrence is requesting this Court to interfere with housing assignments at MSP beyond the status quo without any showing that the facts and law clearly

are in his favor.  But for the reasons set forth above, the Court finds that Mr. Lawrence has not alleged a viable claim for relief and as such he has not shown a likelihood of success on the merits.  The motion for injunctive relief should be denied.

## IV.  MOTION TO AMEND

Mr. Lawrence seeks to add Case Manager Amber Graham as a Defendant in this matter but provides no allegations against Ms. Graham.  (Doc. 7.)  Local Rule 15.1 requires that, "When a party moves for leave to amend or supplement a pleading, the proposed pleading must be attached to the motion as an exhibit." Mr. Lawrence has failed to comply with this rule, therefore his motion to amend will be denied.

## V.  CONCLUSION

The Court has considered whether Mr. Lawrence's Complaint is frivolous, malicious, fail to state a claim, or seek solely monetary relief from a defendant who is immune.  *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b).  Mr. Lawrence has failed to state a claim and as such, his Complaint is subject to dismissal.  It may be possible to cure the defects in Mr. Lawrence's ADA and Eighth Amendment claims by the allegation of additional facts.  Accordingly, Mr. Lawrence will be given an opportunity to file an amended complaint.

### A.  Amended Complaint

Any amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of the original complaints by reference.  Once Mr. Lawrence files an amended complaint, it replaces the original complaint, and the original complaint no longer serves a function in the case. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  If Mr. Lawrence fails to use the court-approved form, the Court may strike the amended complaint and recommend the dismissal of this action.  Mr. Lawrence may not change the nature of this suit by adding new, unrelated claims in his amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Any amended complaint must consist of short, plain statements telling the Court:  (1) the rights Mr. Lawrence believes were violated; (2) the name of the defendant(s) who violated the rights; (3) exactly what <u>each</u> defendant did or failed to do; (4) how the action or inaction of that defendant is connected to the violation of Mr. Lawrence's rights; (5) when the alleged actions took place; and (6) what injury Mr. Lawrence suffered because of that defendant's conduct.  *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Mr. Lawrence must repeat this process for each defendant.  Mr. Lawrence must provide specific factual allegations for each element of each of his claims

16

and must state with specificity to which defendants each claims applies.  If Mr.

Lawrence fails to affirmatively link the conduct of a defendant with an injury

suffered, the allegation against that defendant will be dismissed for failure to state

a claim.

Mr. Lawrence is advised that Section 1983 imposes individual liability upon

state actors only when their personal conduct violates a plaintiff's constitutional

rights.  *Monell v. Department of Social Services*, 436 U.S. 658, 691-94 (1978).

This can be established in two ways.  First, an individual can be held liable for

their own personal acts which directly cause an injury.  But in order to make such

a claim, a plaintiff must make specific factual allegations regarding what each

defendant did or did not do.  General statements such as "violated my rights" or

conclusory statements against a group of defendants are insufficient.

Secondly, an individual can be held liable in their individual capacity under

a theory of supervisory liability.  "[A] plaintiff may state a claim against a

supervisor for deliberate indifference based upon the supervisor's knowledge of

and acquiescence in unconstitutional conduct by his or her subordinates."  *Starr v.*

*Baca*, 652 F.3d 1202 (9th Cir. 2011).  But supervising officers cannot be held

liable under a respondeat superior theory under section 1983.  *Monell*, 436 U.S. at

691-94.  That is, a defendant cannot be held liable just because they supervise

17

other employees. Instead, supervising officers can be held liable under § 1983 "only if they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987).

A supervisor may be liable: (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a reckless or callous indifference to the rights of others. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).

Allegations against supervisors which resemble "bald" and "conclusory" allegations will be recommended for dismissal. *Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2012). Allegations that a supervisory defendant had personal knowledge of a constitutional violation will be insufficient without "specific allegations regarding each Defendant's purported knowledge" of the violation. *Hydrick*, 669 F.3d at 942. If naming a Defendant as a supervisor, Mr. Lawrence must allege "sufficient facts to plausibly establish the defendant's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates." *Hydrick*, 669 F.3d at 942 *citing Starr*, 652 F.3d at 1206–07.

18

### B.  Possible "Strike"

If Mr. Lawrence's amended complaint fails to state a claim upon which relief may be granted, the dismissal could count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g).  Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

### C.  Possible Dismissal

If Mr. Lawrence fails to timely comply with every provision of this Order, this case may be dismissed.  *Ferdik*, 963 F.2d at 1260-61 (court may dismiss an action for failure to comply with any order of the court).

### D.  Address Change

At all times during the pendency of this action, Mr. Lawrence must immediately advise the Court of any change of address and its effective date. Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

19

Based upon the foregoing, the Court issues the following:

## ORDER

1.  Mr. Lawrence's Motion to Amend Defendant List (Doc. 7) is DENIED.

2.  Mr. Lawrence may file an amended complaint on the form to be provided
by the Clerk of Court's Office.  If no amended complaint is filed on or before
August 31, 2018, this matter will be recommended for dismissal for the reasons set
forth in this Order.

Further, the Court issues the following:

## RECOMMENDATIONS

Mr. Lawrence's Motion Seeking Immediate Injunction (Doc. 6) should be
DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Lawrence may file objections to these Findings and Recommendations
within fourteen (14) days after service (mailing) hereof.[1]  28 U.S.C. § 636.  Failure
to timely file written objections may bar a de novo determination by the district

---

[1]Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a
party may or must act within a specified time after being served and service is made
under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise
expire under Rule 6(a)."  Therefore, since Mr. Lawrence is being served by mail, he
is entitled an additional three (3) days after the period would otherwise expire.

judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 1st day of August, 2018.


            */s/ John Johnston*
            John Johnston
            United States Magistrate Judge

21